UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

DAVIS REED
390 South Tyndall Parkway #118
Panama City, Florida 32404

    Plaintiff,

    v.

DCMAS LLC d/b/a
DEDICATED CONSTRUCTION MANAGEMENT
245 Regency Court, Suite 101
Brookfield, Wisconsin 53045

    and

AUDRA TUBIN
245 Regency Court, Suite 101
Brookfield, Wisconsin 53045

    and

KEITH TUBIN
245 Regency Court, Suite 101
Brookfield, Wisconsin 53045

    Defendants.

Case No.: 17-cv-932

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

COMES NOW Plaintiff, Davis Reed, by his counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendants, alleges and shows to the Court as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves claims under Wisconsin's Wage Payment and Collection Laws ("WWPCL"), and these claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants reside and/or operate their business in the Eastern District of Wisconsin and the unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin.

## PARTIES

4. Plaintiff, Davis Reed, is an adult male resident of the State of Florida with a post office address of 390 South Tyndall Parkway #118, Panama City, Florida 32404.

5. Defendant, DCMAS LLC d/b/a Dedication Construction Management (hereinafter "Defendant Company"), was, at all material times herein, a commercial entity with a principal address of 245 Regency Court, Suite 101, Brookfield, Wisconsin 53045.

6. Defendant Company provides construction services across the United States.

7. During the relevant time periods as stated herein, Defendant Company was engaged in "commerce" and/or its employees were engaged in "commerce," as that term is defined under the FLSA.

8. During the relevant time periods as stated herein, Defendant Company employed more than two (2) employees.

9. During the relevant time periods as stated herein, Defendant Company's annual dollar volume of sales or business exceeded $500,000.

10. During the relevant time periods as stated herein, Defendant Company was an "employer" as that term is defined under the FLSA and the WWPCL.

11. During the relevant time periods as stated herein, Mr. Reed was "employed" by and/or an "employee" of Defendant Company as these terms are defined under the FLSA and the WWPCL.

12. Defendant, Audra Tubin, had or maintained, at all material times herein, a business address of 245 Regency Court, Suite 101, Brookfield, Wisconsin 53045.

13. Defendant, Keith Tubin, had or maintained, at all material times herein, a business address of 245 Regency Court, Suite 101, Brookfield, Wisconsin 53045.

14. Defendant Company is owned, operated, and managed by Defendant Audra Tubin and Defendant Keith Tubin.

15. During the relevant time periods as stated herein, Defendant Audra Tubin was an "employer" as that term is defined under the FLSA and/or the WWPCL.

16. During the relevant time periods as stated herein, Defendant Keith Tubin was an "employer" as that term is defined under the FLSA and/or the WWPCL.

## GENERAL ALLEGATIONS

17. In approximately June 2016, Defendants hired Mr. Reed as a Working Supervisor.

18. In his position with Defendant Company as a Working Supervisor, Mr. Reed reported directly to Defendant Keith Tubin, who reported directly to Defendant Audra Tubin.

19. In his position with Defendant Company as a Working Supervisor, Mr. Reed's job duties included performing manual labor, driving from job site to job site, and supervising Defendant Company's employees.

20. In his position with Defendant Company as a Working Supervisor, Mr. Reed physically performed his job duties at and between construction sites and customer projects depending on Defendant Company's and its customers' needs and assignments.

21. Upon Defendants' hire of Mr. Reed in approximately June 2016, Defendants agreed to compensate Mr. Reed with a salary of $1,200.00 per week and a per diem of $25.00 per day.

22. Upon Defendants' hire of Mr. Reed in approximately June 2016, Defendants agreed to reimburse Mr. Reed for any expense purchases and/or materials purchased in conjunction with performing his job duties as a Working Supervisor.

23. In approximately mid-February 2017, Mr. Reed's employment with Defendant Company ended.

24. During the entirety of Mr. Reed's employment with Defendant Company, from approximately June 2016 to mid-February 2017, Mr. Reed was employed by Defendants in the position of, and performed compensable work as, a Working Supervisor.

25. From approximately June 2016 to mid-February 2017, Mr. Reed performed compensable work for Defendant Company in the position of Working Supervisor at the direction of Defendant Audra Tubin and/or Defendant Keith Tubin and/or with Defendants' knowledge.

26. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, he spent approximately ninety percent (90%) of his compensable work time during each workweek performing manual labor and driving from his home to an out-of-town job site, from job site to job site during the work day or workweek, or from an out-of-town job site back to his home.

27. From approximately June 2016 to mid-February 2017, Mr. Reed spent approximately ninety percent (90%) of his compensable work time performing manual labor and driving from his home to an out-of-town job site, from job site to job site during the work day or workweek, or from an out-of-town job site back to his home at the direction of Defendant Audra Tubin and/or Defendant Keith Tubin and/or with Defendants' knowledge.

28. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendants did not compensate Mr. Reed for the time he spent driving from his home to an out-of-town job site, from job site to job site during the work day or workweek, or from an out-of-town job site back to his home during the workweek.

29. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendants compensated him on a salary basis.

30. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendants compensated him with a weekly salary of $1,200.00.

31. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendants compensated him with a weekly salary of $1,200.00 regardless of how many hours of compensable work Mr. Reed performed during the respective workweek.

32. At times during Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendants did not reimburse Mr. Reed for expense purchases and/or materials purchased in conjunction with performing his job duties as a Working Supervisor.

33. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Company's workweek was Monday through Sunday.

34. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendants compensated Mr. Reed on a weekly basis via direct deposit.

35. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin established and/or approved his compensation status and levels or rates of pay.

36. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin established and/or approved for Mr. Reed to be compensated on a salary basis of $1,200.00 per workweek.

37. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin directed the terms and conditions of Mr. Reed's employment.

38. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin established the work rules, policies, and procedures by which Mr. Reed abided by in the workplace.

39. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin established Mr. Reed's work schedule and directed him to perform compensable work on dates and times as determined and established by them.

40. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin had the ability and authority to hire, terminate, promote, demote, and suspend Mr. Reed.

41. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin had the ability and authority to review Mr. Reed's work performance.

42. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin supervised and/or directed Mr. Reed's day-to-day- activities.

43. During the entirety of Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Audra Tubin and Defendant Keith Tubin acted in in the interest of Defendant Company vis-à-vis Mr. Reed's employment and hours of work at it.

44. During Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, he worked approximately forty (40) to seventy-five (75) hours per week performing the duties of his Working Supervisor position.

45. During Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, he did not have a set or predetermined work schedule; instead, Mr. Reed performed compensable work at the direction of Defendants as compensable work became available throughout the workweek.

46. During Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, he rarely, if ever, took a duty free lunch break and/or had a duty free rest period of at least thirty (30) consecutive minutes.

47. During Mr. Reed's employment with Defendant Company as a Working Supervisor, from approximately June 2016 to mid-February 2017, Defendant Company deducted and did not compensate Mr. Reed for approximately thirty (30) minutes of compensable worktime each workday.

8

48. During Mr. Reed's employment with Defendant Company as a Working Supervisor, Defendants suffered or permitted him to work without appropriately and lawfully compensating him at an overtime rate of pay for each hour worked in excess of forty (40) hours in a workweek.

49. During Mr. Reed's employment with Defendant Company as a Working Supervisor, Defendants did not compensate him at an overtime rate of pay for each hour worked in excess of forty (40) hours in said workweeks.

50. During Mr. Reed's employment with Defendant Company as a Working Supervisor, his paychecks did not properly or lawfully compensate him at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek.

51. Defendants knew or should have known that Mr. Reed must be compensated with overtime pay at a rate of time and one half for each hour worked (and for all hours Defendants suffered or permitted him to work) in excess of forty (40) hours in a workweek in accordance with the FLSA and the WWPCL.

52. As the owners, operators, and managers of Defendant Company, Defendant Audra Tubin and Defendant Keith Tubin had a statutory duty to comply with the FLSA.

53. As the owners, operators, and managers of Defendant Company, Defendant Audra Tubin and Defendant Keith Tubin had a statutory duty to remedy FLSA violations of which they were aware and/or of which they should have been aware.

54. Defendants owe Mr. Reed earned and unpaid wages, including at an overtime rate of pay, for work performed during his employment with Defendant Company in the position of Working Supervisor, plus an equal amount for liquidated damages, in an amount that remains to be determined.

55. Defendants owe Mr. Reed reimbursement for expense purchases and/or materials purchased in conjunction with performing his job duties as a Working Supervisor in the amount of approximately $550.

56. Defendants failed to provide any compensation to Mr. Reed, including but not limited to his regular weekly salary of $1,200.00, for compensable work performed during his final week of employment with Defendant Company in February 2017. Thus, Defendants suffered or permitted Mr. Reed to work without appropriately and lawfully compensating him at an effective hourly rate of at least $7.25 per hour for each hour worked during this workweek. Defendants knew or should have known that Mr. Reed must be compensated at an effective hourly rate of at least $7.25 per hour for each hour worked in accordance with the FLSA and the WWPCL.

**FIRST CAUSE OF ACTION – FLSA VIOLATIONS**

57. Mr. Reed re-alleges and incorporates paragraphs 1-56 of this Complaint by reference.

58. Section 206(a)(1) of the FLSA regulates, among other things, the payment of an minimum wage by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

59. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

10

60. At all times material herein, Mr. Reed was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

61. Defendants violated the FLSA by not compensating Mr. Reed with overtime premium pay of time and one half for each hour worked in excess of forty (40) hours in a workweek.

62. Defendants intentionally violated 29 U.S.C. § 215(a) by failing to compensate Mr. Reed with overtime pay at a rate of time and one half for each hour worked in excess of forty (40) hours in a workweek.

63. Defendants violated the FLSA by not compensating Mr. Reed with an effective hourly rate of at least $7.25 per hour for each hour worked during his last week of work for Defendant Company in February 2017, thus intentionally violating 29 U.S.C. § 215(a) by failing to do so.

64. Defendants' failure to properly and legally compensate Mr. Reed for all compensable work performed was willfully perpetrated. Defendants have neither acted in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Mr. Reed is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA. Alternatively, should the Court find that Defendants acted reasonably and with good faith in failing to pay overtime premium pay wages, Mr. Reed is entitled to an award of pre-judgment interest at the applicable legal rate.

65. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld from Mr. Reed by Defendants.

66. Mr. Reed is entitled to damages equal to the mandated minimum wage and/or overtime premium pay within the three years preceding the date of filing of the Complaint, ECF No. 1, plus periods of equitable tolling because Defendants acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA and otherwise engaged in wrongful conduct that prevented Mr. Reed from asserting his claims against Defendants.

67. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

## SECOND CAUSE OF ACTION – WWPCL VIOLATIONS

68. Mr. Reed re-alleges and incorporates paragraphs 1-67 of this Complaint by reference.

69. At all times material herein, Mr. Reed was an employee of Defendant Company within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. §103.001(5), and Wis. Stat. §104.01(2)(a).

70. At all times material herein, Defendant Company was an employer of Mr. Reed within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. §103.001(6), Wis. Stat. §104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

71. At all times material herein, Defendant Company employed Mr. Reed within the meaning of Wis. Stat. §§109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

72. During Mr. Reed's employment with Defendant Company, he worked hours in excess of forty (40) per workweek for which he was not compensated time and one half.

73. During Mr. Reed's employment with Defendant Company, Defendant Company unlawfully deducted and did not compensate Mr. Reed for approximately thirty (30) minutes of compensable worktime each workday.

74. During Mr. Reed's employment with Defendant Company, Defendant Company unlawfully failed to reimburse Mr. Reed for any expense purchases and/or materials purchased in conjunction with performing his job duties as a Working Supervisor, as agreed upon between Defendant Company and Mr. Reed at the commencement of Mr. Reed's employment with Defendant Company.

75. During Mr. Reed's final week of employment with Defendant Company, Defendant Company unlawfully failed to compensate Mr. Reed with his weekly salary of $1,200.00 for work performed during said workweek.

76. Defendant Company willfully violated the WWPCL by failing to compensate Mr. Reed for all hours of compensable time worked at an effective hourly rate of at least $7.25 per hour during his last week of employment with Defendant Company in February 2017.

77. At all times material herein, Mr. Reed regularly performed activities that were an integral and indispensable part of his principal activities without receiving compensation for these activities at an overtime rate of pay at time and one half.

78. The foregoing conduct, as alleged above, constitutes willful violations of the WWPCL.

79. Defendant Company willfully violated the WWPCL by failing to compensate Mr. Reed at a rate of time and one half for each hour of overtime worked.

13

80. As set forth above, Mr. Reed sustained losses in his compensation as a proximate result of Defendant Company's violations. Accordingly, Mr. Reed seeks damages in the amount of his unpaid compensation, reimbursement for any expense purchases and/or materials purchased in conjunction with performing his job duties, injunctive relief requiring Defendant Company to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Mr. Reed may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

81. Mr. Reed seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant Company, pursuant to the WWPCL.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Order Defendants to make Plaintiff whole by reimbursing him for unpaid wages, including but not limited to overtime wages and pre-judgment and post-judgment interest, form any expense purchases and/or materials purchased in conjunction with performing his job duties, and for all times spent performing compensable work for which he was not properly paid as provided for by the FLSA and WWPCL;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute;

3. Grant to the Plaintiff liquidated damages against Defendants; and

4. Grant to the Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 9th day of July, 2017.

>WALCHESKE & LUZI, LLC
>Counsel for Plaintiff
>
>**s/ *Scott S. Luzi*** _____
>James A. Walcheske, State Bar No. 1065635
>Scott S. Luzi, State Bar No. 1067405
>Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com